**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION**

| | |
|---|---|
| United States of America, | Criminal No. 08-364(1)  RHK/AJB |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Thomas Joseph Petters, | |
| Defendant.[1] | |

John R. Marti, Esq., Joseph T. Dixon, III, Esq., and Timothy C. Rank, Esq., Assistant United States Attorneys, for the plaintiff, United States of America; and

Jon M. Hopeman, Esq., and Paul C. Engh, Esq. for defendant Thomas Joseph Petters.

This action came on for hearing before the court, Magistrate Judge Arthur J. Boylan, on March 18, 2009, at the U.S. Courthouse, 316 North Robert Street, St. Paul, Minnesota  55101.  The court issued an Order on Motions dated March 26, 2009, reserving defendant Thomas Joseph Petters' motions to suppress evidence for submission to the district court on report and recommendation.

Based upon the file and documents contained therein, along with the testimony and exhibits received at hearing, and the memoranda and arguments of counsel, the magistrate judge makes the following:

---

[1] Corporate co-defendants Petters Companies, Inc. and Petters Group Worldwide, LLC, are represented by Douglas A. Kelley, Esq.  No pretrial motions were filed by the corporate defendants and there was no appearance at the motions hearing by or on behalf of the corporations.

**Findings**

**Search Warrants.**  On September 19, 2008, a United States District Court Judge issued separate warrants to search a particularly described location in Wayzata, Minnesota (Hrg. Ex. 8), further identified as the residence of Thomas Petters, and a particularly described location in Minnetonka, Minnesota (Hrg. Ex. 10), further identified as the offices of Petters Company, Inc. ("PCI") and affiliated entities.  The search warrants included identical lists of materials that were the objects of the searches, each labeled Attachment A - Items to be Seized.  Attachment A stated that the materials subject to seizure included documents and items from 1995 to the present which related to PCI and several specifically named business entities, investors in PCI and the affiliated entities, and Thomas Petters and other named individuals.  The items to be seized were more particularly described as documents related to the solicitation and acquisition of funds for PCI and related affiliates, including promissory notes and security agreements; documents related to the disposition of investor funds, including accounting, banking, and tax records; documents relating to secured assets; documents which would identify co-conspirators and crime proceeds; documents showing expenditures and monetary liabilities; money and evidence of the location of money and financial instruments; and unopened mail.  Documents were broadly defined as writings and records of every kind, including electronically stored records and storage media.  The residence and office warrants were both issued on the basis of probable cause evidence contained in the Affidavit of FBI Special Agent Timothy Bisswurm (Hrg. Ex. 5), including cooperating witness information, corroboration of the cooperating witness reports, and consensually recorded conversations.  The probable cause statement in the affidavit further describes the basis for the affiant's contention that pertinent documents would

be found at the respective search locations.² The search warrants were contemporaneously executed on September 24, 2008, and documents and other items were seized pursuant to each of the warrants (Hrg. Ex. 9, 11).

**Residence Search.** FBI Special Agent Jean LaPlace was the team leader on the execution of a warrant to search defendant's residence (Hrg. Ex. 8) conducted on the morning of September 24, 2008. Prior to executing the warrant Special Agent LaPlace reviewed the search warrant affidavit (Hrg. Ex. 5). At approximately 9:00 a.m. Agent LaPlace, in the company of a uniformed officer and other agents, knocked on the front door of the residence. When the door was answered the agent identified herself, and the residence occupants were thereafter gathered together and advised that they were free to either stay at the premises or leave. All the occupants left the house as the ensuing search was being conducted. Seven agents participated in the search and Special Agent LaPlace logged seized evidence. Photographs were taken in each room and the seized items were logged with an alphabetic reference to the location at which each item was found (Hrg. Ex. 9). One safe was drilled open. The search ended at approximately 2:48 p.m. Seized items included computers and electronic data storage media, documents, and several watches.

**Business Office Building.** FBI and IRS agents also commenced execution of a warrant to search the corporate offices of PCI. and affiliated entities on the morning on September 24, 2009 (Hrg. Ex. 10). Agents attended an operational meeting the previous day

---

² The search warrant affidavit states that the affidavit was submitted in support of an application for search warrants for nine premises and two vehicles. Only the PCI warrant and Petters residence warrant are subjects of the March 18, 2009, motions hearing and this report and recommendation.

and were given the opportunity to review the warrant affidavit. 56 government agents, working in teams, entered the building and participated in the search. IRS Special Agent Brian Pitzen served as the evidence custodian, recording seized materials and the source location. Upon entering the building the lead agents met a receptionist at the front door and informed that person of the search warrant. Thereafter, agents went to each of the several floors of the building and secured each location for purposes of agent safety. The four-story building, including basement, was a secured facility, requiring employee access cards to enter office areas. Guests were typically escorted to particular offices as necessary. Access cards generally did not provide employee access to all areas of the building, but allowed employee access as needed, in light of the particular company or affiliate for which the employee worked. While some areas of the building were exclusive to a particular company (e.g. the second floor was entirely or predominantly devoted to Polaroid), other areas were shared to at least some degree, (e.g. the third floor held multi-company legal, finance, and marketing areas). Building entrances, a cafeteria, and several Petters' enterprise offices were on the first floor; and parking, storage, and exercise facilities were located on the basement level (Hrg. Ex. 14). Also, certain executive offices were locked, and access was limited to persons with keys to the particular offices. Finally, there were several locked safes and locked cabinets located throughout the building; there was a locked basement storage area; and computers were password secured. Records relating to various separate enterprises and entities with offices in the building were co-mingled in the lower-level storage area. Defendant Petters had access to his own master access card and master key. The building was closed for business at night and a security guard was on duty throughout the evening, commencing at 3:30 p.m.

Executive offices, including offices of Thomas Petters, Deanna Coleman, and D. Ackerman were on the third floor (Hrg. Ex. 15). In addition to Thomas Petters himself, his secretary–Diana Anderson, Deanna Coleman, Patty Hamm, and Dawn Ackerman, had access to Petters' office. Seized materials were described by source location on the search warrant inventory (Hrg. Ex. 11). A substantial portion of the seized documents relating to PCI, approximately 40-50 boxes, were taken from shelves in a caged storage area on the lower level. Several particularly described items were seized from defendant Petters' office.

Corporate defendant Petters Group Worldwide, LLC ("PGW") has a written document retention policy (Hrg. Ex. 16) that expressly states that all company records are property of the company and do not belong to departments or individuals, and that no employee has any personal or property right in any company records. PGW is incorporated in Delaware. The company was initially established under a Limited Liability Agreement under the name TJP Holding, LLC and has also been previously named Petters Group, LLC (Hrg. Ex. 18). Defendant PCI is incorporated in Minnesota (Hrg. Ex. 18). Agents executing the search warrant were instructed not to examine documents that potentially involved communications with a lawyer and were further instructed to deliver such documents to a separate search team that was focused on searching offices most likely to be associated with legal work on behalf of Petters entities. On September 26, 2008, grand jury subpoenas for financial records of PGW and PCI (Hrg. Ex. 17) were served by delivery to counsel for defendant Petters.

**Bellagio Statements.** On September 24, 2008, Nevada Gaming Control Board Agent Jesse Prieto received a telephone call from FBI Special Agents Eileen Rice and Matthew

Corten[3] to make arrangements for him to meet them at approximately 6:30 that morning at the Bellagio Hotel in Las Vegas, Nevada. At the time defendant Thomas Petters was a guest at the Bellagio. The FBI agents were seeking Agent Prieto's assistance in contacting the Bellagio Hotel security office to facilitate a meeting with Mr. Petters in his hotel room. Prieto and Special Agents Rice and Corten thereafter met the Bellagio security manager at the hotel security office, and all of them then proceeded to Mr. Petters' room through a back elevator. The Bellagio security manager knocked on the door to Petters' hotel room, No. 23001, at approximately 7:00 a.m., and Mr. Petters promptly answered within 15 seconds of the knock. Petters was wearing a robe and was holding a cell phone. The hotel security manager and the FBI agents were dressed in business clothes while Agent Prieto was casually attired and carried a firearm. Prieto had no prior familiarity with Petters or his businesses, but had been advised that search warrants were being executed elsewhere, commencing at 7:00 a.m.

   Special Agent Rice immediately identified herself and her companions and asked if they could enter the suite and ask Petters some questions. Mr. Petters admitted them into the suite and they all went into a foyer area. At that time Mr. Prieto proceeded further into the suite to check other rooms for safety purposes. He did not conduct a search of the other rooms, and he returned to the hallway upon satisfying himself that there were no immediate safety concerns. The entire group then went into the living area of the hotel suite, and they all sat at a dining room table. Special Agent Rice again identified herself and the other visitors and each of them showed badges and credentials. Mr. Petters asked if he was going to be arrested. In response,

---

[3] Special Agent Eileen Rice is based in FBI offices in Minneapolis, Minnesota, and Special Agent Corten is based in FBI offices in Las Vegas, Nevada.

Agent Rice told him that he was not being arrested and was not obligated to speak with her, and that his cooperation in an interview was voluntary. Petters stated that he was willing to talk with the agents. Rice advised the defendant that he was suspected of perpetuating fraud by involvement in a Ponzi scheme, and that multiple search warrants were being executed in Minnesota at the same time. During the conversation, Mr. Petters cell phone began to ring. Petters checked the caller ID on the phone, but did not answer the call. Agent Prieto asked him to silence the phone during the interview, whereupon Petters handed the phone to Prieto who silenced the phone and set it in front of Petters. The phone was not taken from him. In further discussion Special Agent Rice described the nature of the suspected fraud and Petters subsequently offered the comment, "I'm in charge, I'll bite the bullet." Approximately 15 minutes into the interview, a phone call came on the hotel room hard line. Defendant Petters answered the phone call and engaged in conversation. The defendant was not physically restrained and was not restricted by agents with respect to answering the call or the content of the phone conversation. Agents did not listen in on the conversation, but they did perceive that the defendant was speaking with an attorney. Agent Corten asked Mr. Petters whether it was a lawyer on the phone and Petters nodded yes and continued talking on the phone. After hanging up Petters was asked whether he still wanted to continue talking with them. The defendant did not say no, but he was indecisive about proceeding with the interview and the agents then stated that they could no longer speak with him because he may be represented by a lawyer. Petters thereafter indicated that he had some questions regarding the investigation, to which the agents did not respond, though he was later asked whether he was planning to fly back to Minneapolis. The agents left the hotel room at approximately 7:30 a.m. after exchanging telephone numbers

with Mr. Petters. During the meeting Petters maintained a pleasant demeanor and appeared relaxed. He did not ask to leave the room and did not ask agents to leave the room. Defendant was not handcuffed or otherwise physically restricted from movement during discussions with agents; he was not denied telephone access during the meeting; and he was not arrested at the end of the interview.

**Recorded Telephone Statements.** Subsequent to defendant Thomas Petters' arrest and detention a telephone conversation between Mr. Petters and Tracy Mixon was recorded at the jail. The call was commenced as a collect call from Petters. By way of recorded message the participants were expressly advised that the call was subject to monitoring and recording (Hrg. Ex. 21). On October 1, 2008, prior to Mr. Petters detention, a telephone conversation between Petters and Robert White was recorded with the consent of Mr. White (Hrg. Ex. 22).

Based upon the foregoing Findings, the magistrate judge makes the following:

**Conclusions**

1. **Residence Search Warrant.** Evidence seized pursuant to a warrant to search a particularly described residence in Wayzata (Hrg. Ex. 8), was not unlawfully obtained in violation of the constitutional rights of defendant Thomas Joseph Petters. The residence search warrant was issued on September 19, 2008, and was based upon evidence sufficient to establish probable cause as stated in the Affidavit of Timothy Bisswurm (Hrg. Ex. 5) and as determined by a United States District Court Judge. Probable cause evidence included corroborated information from a cooperating witness and consensually monitored conversations, and further stated grounds establishing probable cause to believe evidence would be found at defendant's

residence.  The warrant properly and sufficiently identified the location of the search and the items to be seized.  The search warrant in this matter was lawfully issued and there is no requirement for suppression of seized evidence based upon a deficiency in the warrant.  Notwithstanding the lawfulness of the warrant itself, the execution of the residence search warrant was over broad with respect to items seized.  The warrant inventory (Hrg. Ex. 9) indicates that numerous watches, cash, and a firearm were seized from the residence.  The warrant nowhere specifically authorizes the seizure of the indicated physical evidence, and review of the list of items to be seized attached to the warrant reveals no provision under which such seizures might be authorized by reference to the nature of the items, either as contraband, proceeds, or otherwise.  The seized items described as a Ruger firearm, various watches, and $3,101 in U.S. currency should be suppressed, and in the absence of alternative grounds for retention of the items, they should be returned.

2.  **Office Search Warrant.**  Evidence seized pursuant to a warrant to search the offices of PCI and affiliated entities, located at a particularly stated address in Minnetonka, Minnesota (Hrg. Ex. 10), was not unlawfully obtained in violation of the constitutional rights of defendant Thomas Joseph Petters.  The corporate offices search warrant was issued on September 19, 2008, and was based upon sufficient probable cause as stated in the Affidavit of Timothy Bisswurm (Hrg. Ex. 5) and as determined by a United States District Court Judge.  Probable cause evidence included corroborated information from a cooperating witness and consensually monitored conversations, and further stated grounds establishing probable cause to believe evidence would be found at the designated office building.  The warrant properly and sufficiently identified the location of the search and the items to be seized.  The search warrant in

this matter was lawfully issued and executed and there is no requirement for suppression of seized evidence based upon a deficiency in the warrant.

**Standing.** Defendant Thomas Petters lacks standing to challenge the search warrant authorizing the seizure of materials from the offices of PCI and affiliated entities in Minnetonka, Minnesota, except to the extent that the warrant authorized the seizure of materials located in his private office at the Minnetonka office building. Likewise, Mr. Petters may not assert attorney-client privilege to preclude government examination with respect to documents seized from areas other than his own office in the Minnetonka office complex, including, but not limited to documents located in areas designated as offices of particular business entities, documents found in the private offices of other company executives, materials seized from multi-company legal, finance, and marketing areas, and documents obtained from storage areas. Mr. Petters does have standing to assert attorney-client privilege with respect to pertinent documents seized from his private office at the Minnetonka office building, as well as any privileged documents that may have been seized from his private residence.

Fourth Amendment rights are personal and the defendant is entitled to seek suppression of evidence obtained in violation of the Fourth Amendment only upon demonstrating that he had a legitimate expectation of privacy that was violated by the search. United States v. Najarian, 915 F.Supp. 1441, 1449 (D. Minn. 1995)(citations omitted). The defendant has the burden of showing a sufficiently close connection to the relevant search locations to establish standing. Id. (citing cases). In the present matter, defendant Petters offers little or no evidence to support a contention that he had any significant expectation of privacy with respect to any area of the building apart from his private office. While there was testimony

to the effect that Mr. Petters had access to a master key, there is no evidence to establish that he exercised exclusive control over the key and more importantly, there is no showing that he personally maintained control over access to areas other than his own office. Najarian at 1450.

> Whether a corporate officer has standing to challenge the search of business premises depends upon whether the officer has made a "sufficient showing of possessory or proprietary interest in the area searched," and whether the officer has demonstrated a sufficient nexus between the area searched and his own work place. * * * Generally, courts tend to find that these two elements are sufficiently established when the area searched is set aside for the defendant's exclusive use, such as an individual office. * * * However, courts are more skeptical of standing claims when the defendant only occasionally used the area searched. The greater the degree of exclusivity and control over a work area, and the more time a defendant spends there, the more likely standing is to be found. * * * By contrast, the less private a work area–and the less control a defendant has over that work area–the less likely standing is to be found.

Najarian at 1452 (quoting United States v. Hamdan, 891 F.Supp. 88, 94-95 (E.D.N.Y. 1995)). In considering the circumstances in the present matter, the court finds essentially no evidence that any area of the building, other than his own private office, was set aside for defendant Petters' exclusive use, and there is no evidence to establish that Petters spent any significant amount of time in those other areas of the building that were devoted to storage, private offices of other company executives, offices of affiliated business, or multi-company legal, finance, and marketing areas. Indeed, there is no abundance of evidence indicating that Petters exercised exclusive control over his own private office, though the office was designated for his personal use, contained personal items, and was locked. In the absence of any noteworthy showing by defendant, the court concludes that Mr. Petters lacks standing to challenge the search and seizure of evidence at the offices of PCI and affiliated businesses. However, the court concludes that the

defendant does have standing to object to the search of his private office. Notwithstanding this determination on standing, the search warrant was lawfully issued and executed, and suppression of evidence obtained as a result of search and seizure is not required. See United States v. Judd, 889 F.2d 1410 (5th Cir. 1989).

**Attorney-client privilege**. Defendant Thomas Petters has failed to establish his standing to assert attorney-client privilege with respect to corporate/business legal documents seized from the offices of PCI and affiliated entities in Minnetonka, Minnesota, as to which a court appointed receiver has waived the privilege on behalf of the companies. Defendant generally and broadly asserts attorney-client privilege to preclude government examination of seized corporate documents. Mr. Petters does not direct the court to any particular document(s) or category of documents, whether by subject matter or as a communication with a particular attorney, or otherwise. Rather, he merely challenges the receiver's authority to unilaterally waive a jointly held privilege which he may share with a business entity, as well as claiming an individual privilege in communications involving his personal rights and liabilities.

A party seeking to claim the benefit of attorney-client privilege carries the burden of establishing the right to invoke the protection of the privilege. Hollis v. Powell, 773 F.2d 191, 196 (8th Cir. 1985). In this instance, the claim of privilege by Mr. Petters is presented wholly in the abstract, without identification of specific documents and without any contextual reference to the nature or subject matter of privileged communications. The court further notes that the existence of factors to be considered with regard to joint representation privilege is distinct from the existence of actual facts which might be alleged to establish standing. Meanwhile, Mr. Petters does not state that defense access to seized documents has been denied or restricted, and

it is not asserted that any affirmative effort to identify pertinent documents has been undertaken in an attempt to establish grounds for an evidentiary hearing. Defendant has not established standing as necessary to seek suppression of privileged documents whether by broad application or in regards to particular documents.

        3. **Bellagio Statements.** Defendant Thomas Joseph Petters' statements to FBI Special Agents Eileen Rice and Matthew Corten, Nevada Gaming Control Board Agent Jesse Prieto, and a hotel security manager on September 24, 2008, were not made while defendant was under arrest or in a custodial setting. The agents and the defendant were meeting pursuant to Special Agent Rice's request and defendant Petters' voluntary and willing consent. The agents were invited into the defendant's private suite at the Bellagio Hotel in Las Vegas, Nevada, and the invitation was not coerced in any respect. Defendant's statements were freely and voluntarily provided; the statements were not the result of promises, threats, or coercion; the statements were not otherwise obtained in violation of Mr. Petters' constitutional rights, including the right to counsel and the right to remain silent; and defendant was not arrested at the conclusion of the interview. Under the circumstances of the interview in this instance there was no requirement that the defendant be advised of his rights per Miranda. He was not compelled to stay at any time before, during, and after the meeting, and agents would have left the premises upon defendant's request at any time during the meeting. The interview did not take place contrary to any representation by defendant to the effect that he was represented by an attorney, and agents ended the interview upon learning the Mr. Petters had been speaking with an attorney by telephone. The defendant was not physically or psychologically coerced into meeting with agents on September 24, 2008, and during the interview Mr. Petters was not coerced or

overwhelmed by agents. In addition, there is no evidence of a physical, mental, or chemically induced condition such that either the defendant's judgment or physical capacity to resist agent's efforts to obtain his statements was impaired to any meaningful degree.

In considering whether the defendant was in custody during questioning the court must assess the totality of the circumstances. United States v. Axsom, 289 F.3d 496, 500 (8th Cir. 2002). Custody occurs when the subject's freedom of action is limited in any significant manner. Id. at 500 (citing United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990) and Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602 (1966)). The court must consider the presence and extent of physical and psychological restraints upon the subject's liberty during questioning and thereafter determine whether a reasonable person in the suspect's situation would have understood that he was indeed in custody. Axsom, 289 F.3d at 500 (citing Griffin, 922 F.2d at 1347). Indicia which are commonly applied in determining custody are:

> (1) whether the suspect was informed that the questioning was voluntary and that the subject was free to leave or request that officers leave, or that the suspect was not under arrest; (2) whether the suspect possessed unrestrained freedom during questioning; (3) whether the suspect initiated contact with law enforcement or voluntarily acquiesced to requests for responses to questions; (4) whether strong arm tactics or deception were used during questioning; (5) whether the atmosphere of the questioning was police dominated; or (6) whether the subject was arrested at the conclusion of questioning.

Id. (citing Griffin, 922 F.2d at 1349). In the present instance the defendant was expressly advised that his cooperation was voluntary, that he was not obligated to speak with the agents, and that he was not being arrested. The defendant voluntarily assented to the meeting and any questioning, the defendant's freedom actually was unrestricted, and he was indeed free to leave, or request that the agents leave, at any time. The facts pertinent to the first three Griffin factors strongly mitigate against the existence of custody in this matter. Proceeding further with an

analysis of factors which relate to the aggravating conduct of agents, there were no strong arm tactics used by the agents and questioning was not deceptive. The atmosphere of the questioning was likely police dominated, but not to a degree that the atmosphere or the environment was oppressive, and the defendant was not arrested at the end of the meeting. In essence, none of the aggravating factors weight in favor of a conclusion that Mr. Petters was in custody at any time on September 24, 2008. Statements obtained from defendant Petters on September 24, 2008. should be not suppressed. See United States v. Czichray, 378 F.3d 822, 826-30 (8th Cir. 2004).

    4. **Recorded Statements.** Statements made by defendant Thomas Petters in separate recorded telephone conversations with Tracy Mixon and Robert White were not obtained in violation of Petters' constitution rights and suppression of the statements is not required. Statements made in the context of a telephone discussion between Petters and White (Hrg. Ex. 22) were lawfully recorded with the consent of Mr. White, a participant in the conversation. Statements made in the context of a telephone discussion between Petters and Ms. Mixon (Hrg. Ex. 21) were lawfully recorded pursuant to express notice that the jail house call was subject to monitoring and recording.

    5. **McDade Act, 28 U.S.C. § 530B(a).** By operation of the McDade Act, defendant seeks to sanction the government for violation of Minnesota's Rule of Professional Conduct prohibiting an attorney from directly contacting a person known to be represented by counsel with respect to the subject of the representation. Minn. R. Prof. Conduct 4.2 (2008). Specifically, defendant seeks suppression of his telephone statements to Robert White. In the investigation in this matter law enforcement officers did not initiate communications with defendant Thomas Petters at the Bellagio Hotel with the knowledge that he was represented by

counsel regarding the subject matter of the investigation, and neither suppression of interview statements nor dismissal of the prosecution is required for violation of ethical requirements as to the September 24, 2008, interview statements.  However, the statements contained in a recorded conversation with Robert White on October 1, 2008, were obtained at the instigation, and in the presence, of an FBI Special Agent, after agents had terminated the interview at the Bellagio Hotel one week earlier because the defendant had conferred with a lawyer by telephone.  The government contends that the telephone statements should not be suppressed because the contact was not made for purposes of obtaining information relating to the Petters business investigation, but rather, the call from Mr. White was initiated in regards to new and different offenses, (i.e. obstruction of justice by encouraging witnesses to flee the country).  A determination to that effect has already been made by Chief Judge Michael J. Davis in the context of detention proceedings.

At the time of the recorded conversation with Mr. White, defendant was arguably represented by counsel with respect to the allegations stated in a criminal complaint dated October 2, 2008, as well as the indictment that was returned on December 1, 2008.  However, he was contacted by White, at the direction of Special Agent Bisswurm, with respect to a separate matter, (i.e. avoiding prosecution).  As a constitutional matter, the Sixth Amendment right to counsel is offense-specific and does not attach until a prosecution is commenced. Parker v. Bowersox, 188 F.3d 923, 927 (8th Cir. 1999)(citing McNeil v. Wisconsin, 501 U.S. 171, 175, 111 S.Ct. 2204 (1991)).  A valid invocation of the right to counsel with respect to one charge typically will not have effect with respect to different charges on which the defendant has not been arraigned,  Hellum v. Warden, U.S. Penitentiary–Leavenworth, 28 F.3d 903, 909 (8th Cir.

1994), particularly where the different charges are not "inextricably intertwined " Id. (citing United States v. Hines, 963 F.2d 255, 257 (9th Cir. 1992)). At the time of the Robert White phone call, defendant Petters' may have effectively established that he was represented by counsel with respect to the fraud allegations on which he has since been formally charged. However, Special Agent Bisswurm was investigating possible criminal activities for which defendant had not been charged and were not an intrinsic part of the primary investigation. Under these circumstances the right to the presence of counsel was not automatically effectuated. Furthermore, the subjects of each investigation are not inter-dependent and the charges are certainly not inextricably intertwined in a manner that compels recognition of a carry-over right to counsel under the Sixth Amendment.

Likewise, there is no violation of Rule 4.2 of Minnesota's Rules of Professional Conduct where contact by White and Bisswurm was not made with respect to the fraud investigation that was the subject on which Mr. Petters was known to be represented by counsel. In any event, to the extent that a Rule 4.2 violation may be perceived, Minnesota applies a rule whereby the court must evaluate the egregiousness of the violation, and in some instances, suppression may be warranted. State v. Clark, 738 N.W.2d 316, 341 (Minn. 2007). In Clark, the court noted that nearly all other jurisdictions find suppression to be an inappropriate sanction for violation of a no-contact ethics rule. Id. at 340. In the present case, the telephone conversation between Mr. White and Mr. Petters took place on October 1, 2008. Mr. Petters was not in custody during the conversation and he was not formally charged with an offense until the following day. Also, there was no constitutional violation, Petters was not in custody at the time of the phone discussion, he had not expressly advised agents that counsel had been retained for

purposes of criminal defense, and although agents had noted the possible involvement of counsel for Mr. Petters based upon events at the Bellagio Hotel on September 24, 2008, there is no evidence indicating that he was represented with respect to particular ancillary matters that were not directly related to the fraud investigation.  The court finds that the phone conversation between White and Petters did not relate to the subject matter on which Petters might have been represented and therefore the contact was not a violation of Rule 4.2.  In any event, even if the tangential relationship between the contact and the fraud investigation were sufficient to establish a Rule 4.2 ethics violation, such violation was not sufficiently egregious to require suppression of the statements or other sanction.  Defendant's consensually recorded telephone statements to Robert White on October 1, 2008, should not be suppressed for purposes of trial in this matter.  See State v. Miller, 600 N.W. 457, 466 (Minn. 1999)(citing United States v. Fitterer, 710 F.3d 1328, 1333 (interpreting the then applicable Minnesota disciplinary rule, DR 7-107(A)(1), as not intended to stymie undercover investigations when the subject retains counsel)).

Based upon the foregoing Findings and Conclusions, the magistrate judge makes the following:

### RECOMMENDATION

The Court **hereby recommends** that:

1. Defendant Thomas Joseph Petters' Motion to Suppress (4400 Baker Road) be **granted in part and denied in part** [Docket No. 125]. It is recommended that the motion be granted to the extent that the defendant seeks suppression and return of a Ruger firearm, various watches, and $3,101 in U.S. currency, and that the motion be denied in all other respects;

2. Defendant Thomas Joseph Petters' Motion to Suppress (655 Bushaway Road) be **denied** [Docket No. 127];

3. Defendant Thomas Joseph Petters' Motion to Suppress for Violation of McDade Act be **denied** [Docket No. 129];

4. Defendant Thomas Joseph Petters' Motion to Suppress Statements be **denied** [Docket No. 131]; and

5. Defendant Thomas Joseph Petters' Motion for Continuance be **denied as moot** [Docket No. 154].  Pursuant to Order by the district court dated April 17, 2009, a jury trial in this matter is rescheduled to commence on September 14, 2009, with jury selection to commence on September 8, 2009.

Dated:     April 28, 2009

   s/Arthur J. Boylan
Arthur J. Boylan
United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before May 12, 2009.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.