# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

United States of America,

Plaintiff,

Crim. No. 08-364 (RHK/AJB)
**ORDER**

v.

Thomas Joseph Petters,

Defendant.

---

This matter is before the Court on (1) the Government's Motion for Preliminary Order of Forfeiture (Doc. No. 366) and (2) Defendant's Motion to Stay Order of Forfeiture (Doc. No. 377). For the reasons set forth below, the Court will grant the Government's Motion and deny Defendant's Motion.

On December 2, 2009, Defendant was convicted by a jury of 20 counts of wire fraud, mail fraud, conspiracy, and money laundering. The Government later moved for a preliminary order of forfeiture, seeking to preliminarily forfeit to the United States Defendant's interest in several real properties obtained with funds traceable to, or involved in, Defendant's fraud. The Government also sought forfeiture of funds held in Defendant's name at JP Morgan Bank. Defendant filed no substantive response and instead filed a Motion asking the Court to (1) decline to enter a preliminary order of forfeiture or, alternatively, (2) stay the entry of such an order if the Court were inclined to grant it.

Federal Rule of Criminal Procedure 32.2(b)(1)(A) provides that, "[a]s soon as practical after a verdict or finding of guilty, . . . the court must determine what property is subject to forfeiture." If the Court finds that certain property is forfeitable, "it must promptly enter a preliminary order of forfeiture." Fed. R. Crim. P. 32.2(b)(2)(A). Property is forfeitable if the Government establishes, by a preponderance of the evidence, that a nexus exists between the property and the offenses for which the defendant has been convicted. Fed. R. Crim. P. 32.2(b)(1)(A); United States v. Bieri, 21 F.3d 819, 822 (8th Cir. 1994).

Here, the Court concludes that the property identified by the Government in its Motion is subject to forfeiture. Indeed, Defendant has conceded as much by failing to interpose a substantive response to the Government's Motion. Even absent that concession, however, the Court would conclude, based on the evidence presented with the Motion and at trial, that the requisite nexus has been established and that forfeiture is appropriate. Accordingly, the Court *must* enter a preliminary order of forfeiture. Fed. R. Crim. P. 32.2(b)(2)(A). The Court finds no legal support for Defendant's contention that it may decline to issue such an order, and Defendant has cited none. See United States v. Miller, No. 06-40151, 2009 WL 2949784, at *9 (D. Kan. Sept. 10, 2009) (noting that "[t]here is nothing in [Rule 32.2] authorizing the court" to decline to enter a preliminary order of forfeiture).

Nevertheless, Rule 32.2 *does* authorize the Court to stay a forfeiture order once issued, "on terms appropriate to ensure that the property remains available pending

appellate review." Fed. R. Crim. P. 32.2(d). The purpose of a stay "is to ensure that the property remains intact and unencumbered so that it may be returned to the defendant in the event the appeal is successful." Fed. R. Crim. P. 32.2(d) (2000 advisory committee's note). A stay under Rule 32.2(d) is discretionary with the Court. E.g., United States v. Davis, Crim. No. 07-11, 2009 WL 2475340, at *2 (D. Conn. June 15, 2009); United States v. Riedl, 214 F. Supp. 2d 1079, 1082 (D. Haw. 2001). Although the Eighth Circuit has not yet decided what factors a court must consider when deciding whether to exercise its discretion to issue a stay, several courts have considered the four factors set forth in Riedl: (1) the defendant's likelihood of success on appeal; (2) whether the forfeited asset will likely depreciate over time; (3) the forfeited asset's intrinsic value to the defendant; and (4) the expense of maintaining the forfeited asset. 214 F. Supp. 2d at 1082; accord, e.g., Davis, 2009 WL 2475340, at *2; United States v. Bradley, 513 F. Supp. 2d 1371, 1380 (S.D. Ga. 2007); United States v. Hronek, No. 5:02-CR-142, 2003 WL 23374653, at *1 (N.D. Ohio Aug. 4, 2003). Considering these factors here, the Court concludes that a stay is unwarranted.

First, the Court believes Defendant is unlikely to succeed on appeal. While the Court, of course, cannot anticipate what issues Defendant will raise on appeal, the Government's evidence at trial was overwhelming. Dozens of witnesses testified against Defendant, including high-level co-conspirators implicating him in the fraud, and the Government introduced thousands of documents, tape-recorded conversations, and e-mails undermining his contention that he was unaware of what was occurring. The

strength of the Government's case is further evidenced by the jury having returned guilty verdicts on all 20 counts with which Defendant was charged.

Second, the properties for which the Government seeks forfeiture are unlikely to have intrinsic value to Defendant and, indeed, he has not argued otherwise. Notably, many of the properties were his secondary or vacation residences; some were used only by his family members. While one was his primary residence, he no longer resides there, having been in custody since his arrest in connection with this case. Moreover, that property has no particular historical or familial significance to him – it was not passed down to him from prior generations, for example. Rather, it sits on a lot he purchased using ill-gotten gains, prior to tearing down the home then-standing there. See, e.g., Davis, 2009 WL 2475340, at *2 (stay might be appropriate "where a longtime home, . . . with intrinsic and nostalgic value to the defendant distinct from its monetary value, [is] subject to forfeiture"); United States v. Evanson, No. 2:05-CR-805, 2008 WL 4335549, at *1 (D. Utah Sept. 22, 2008) (stay unwarranted where defendant failed to show that real property was "unique and cannot be replaced through reimbursement from the government if he succeeds on appeal").[1] Finally, the Court notes that the properties are now under the control of the Receiver in the parallel civil action pending before Judge Montgomery. Defendant consented to the appointment of that Receiver, who has already

---

[1] Defendant contends that a stay is appropriate because "[r]eal property is unique in that it is difficult to reverse a forfeiture and sale once completed." (Mem. in Opp'n at 3.) This is no doubt true. Yet, under Defendant's logic preliminary forfeiture of real property would almost never be appropriate. The Court declines to endorse such a result.

sold some of the properties at issue; this undermines any conclusion that the properties have special significance to Defendant.

Defendant points out that his girlfriend and their two young children live in one of the properties, and the Court recognizes the inconvenience they will face if forced from their home. Yet, there has been no showing that they will be unable to find alternative housing in the event the property is seized and sold. Nor has there been any showing that the property has some historical value to them. The purpose of a stay is to ensure that forfeited property remains available for return to the defendant in the event he succeeds on appeal, not to make sure his loved ones continue to enjoy a place to reside. Quite simply, whatever difficulties they may encounter as a result of forfeiture are due to Defendant's massive fraud and are not this Court's primary concern. See Bradley, 513 F. Supp. 2d at 1380 (fact that defendant's wife, who was not implicated in defendant's fraud, continued to live in house Government sought to forfeit was insufficient to warrant stay, where record disclosed "no special or intrinsic value" in the property; "The mere fact that she and her husband injected sentimentality into" the property "does not carry the day here.").

Third, there can be no serious dispute that the properties are expensive to maintain. Expenditures for heating costs, real-estate taxes, and general maintenance all continue to accrue in the absence of forfeiture and sale, money that would otherwise go to Defendant's victims. Moreover, forfeiture is designed to create a pool of assets from which Defendant's victims can be reimbursed (if only in part). Delaying forfeiture "will

only prolong the ability of [Defendant's] victims to receive distributions . . . and would only serve to further harm [them]." <u>Davis</u>, 2009 WL 2475340, at *3. Simply put, the sooner the properties are sold, the better off Defendant's victims will be.[2]

On balance, the factors set forth in <u>Riedl</u> militate strongly against a stay. Accordingly, and based on all the files, records, and proceedings herein, **IT IS ORDERED** that the Government's Motion for Preliminary Order of Forfeiture (Doc. No. 366) is **GRANTED** and Defendant's Motion to Stay Order of Forfeiture (Doc. No. 377) is **DENIED**. A Preliminary Order of Forfeiture will separately issue.


Dated: March 24, 2010                                                  s/Richard H. Kyle
                                                                       RICHARD H. KYLE
                                                                       United States District Judge

---

[2] No showing has been made regarding the final <u>Riedl</u> factor: whether the properties are likely to depreciate over time. However, given the current (and well-documented) weaknesses in the nation's real-estate market, the Court believes there is a substantial risk the properties will depreciate as time passes.