# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

      Plaintiff,

            Crim. No. 08-364 (RHK/AJB)
            **ORDER**

v.

Thomas Joseph Petters,

      Defendant.

---

  This matter is before the Court *sua sponte*.

  Following the Defendant's conviction, the Government moved to defer the issue of restitution[1] until 60 to 90 days after sentencing. (See Doc. No. 370.) This was due to the "complexity, duration, and scope of the offense," which made "identification of all victims and their respective losses" difficult to determine. (Id. at 1.)[2] Pursuant to its authority under 18 U.S.C. § 3664(d)(5), the Court granted the Government's Motion and continued the restitution issue for 60 days following sentencing, to June 9, 2010. (See Doc. No. 375.)

---

[1] The term "restitution" means "the act of making good or giving equivalent [value] for any loss, damage, or injury." Black's Law Dictionary 1313 (6th ed. 1990). Under the Mandatory Victims Restitution Act ("MVRA"), defendants convicted of certain crimes are required to make restitution to their victims, with limited exceptions discussed in more detail below. See 18 U.S.C. § 3663A.

[2] The Defendant was convicted of twenty counts of mail fraud, wire fraud, money laundering, and conspiracy in connection with a multi-billion-dollar Ponzi scheme lasting more than a decade.

The Government later requested that the Court set a "restitution schedule." Noting the "complexity" of the issue, it asked the Court to approve a schedule requiring the Government to submit a preliminary restitution order six weeks before the restitution hearing, after which victims would be permitted to object, the Government and the Defendant could respond to the objections, and the Court would then consider the objections at the hearing. (See Doc. No. 393.) In light of "the complexity and nature of the [victims'] claims," the Court approved this schedule by Order dated April 8, 2010 (Doc. No. 398).

Meanwhile, the United States Probation Office prepared the Defendant's pre-sentence investigation report ("PSI"). The PSI included a victim list identifying the individuals and entities purportedly entitled to restitution as a result of the Defendant's fraud. Although the PSI indicated that "the total amount of restitution is at least $1.8 billion," the losses contained on the victim list totaled slightly under $900 million. This discrepancy was due to the fact that no loss amount was specified for approximately half of the individuals/entities identified as victims.[3] Neither the PSI nor the victim list contained any indication how the loss amounts were calculated or where the documents supporting the loss figures could be found, and no documents substantiating the amounts

---

[3] By the Court's count, there were 338 victims identified on the victim list appended to the PSI, running the gamut from individuals to hedge funds, retirement funds, and other sophisticated investment entities.

were submitted with the PSI.[4]

On April 28, 2010, the Government filed its proposed preliminary restitution order, attaching a list identifying 434 victims seeking just under $2 billion in restitution. The victim list differed in several ways from that appended to the PSI, including identifying new victims, removing others, increasing the amount sought for some victims, and decreasing it for others. As an example, the amount sought for one victim dropped by approximately *$90 million*. Despite the additional time the Government had requested before submitting its preliminary order, it provided no explanation for these changes and acknowledged that the list was "based on information that is currently available," which "[i]n some instances . . . may be incomplete." (Doc. No. 410 at 2.)

Pursuant to the Court's restitution schedule, victims were then afforded the opportunity to object to the preliminary restitution order; nearly 100 did so. In response, the Government has now filed its "final" proposed restitution order, along with the objections. While the Government has "accepted" many objections and "not accepted" others, the record does not provide much (if any) information about the basis for the objections or the Government's reasons for accepting/rejecting them. For instance, the Government has removed from the victim list one objector who it claims was a "net

---

[4] By way of reminder, the trial in this action lasted approximately five weeks and involved scores of boxes (and millions of pages) of documents. See Fed. R. Crim. P. 32(b)(1)(B) (probation officer must "conduct an investigation and submit a report that contains sufficient information for the court to order restitution"); 18 U.S.C. § 3664(a) (PSI shall contain "information sufficient for the court to exercise its discretion in fashioning a restitution order," including "a complete accounting of the losses to each victim").

winner."[5] The Court, however, has not been directed to any documents or other evidence to support that conclusion.

Moreover, the "final" victim list contains approximately 40 additional victims not previously disclosed, and the amount of restitution sought has increased or decreased in several instances without any obvious explanation. The total amount of restitution is now more than $500 million greater than that on the preliminary list.

The Government has attempted to provide some explanations for these changes, but many leave the Court wanting. For example, one victim's initial claim was more than $320 million, which was reduced to approximately $139 million on the Government's preliminary victim list. With its final list, however, that victim (and its large claim, which accounts for over 5% of the restitution total) has been deleted entirely. The Government's ostensible basis for doing so is the following cursory explanation: "Claim withdrawn." Besides having difficulty accepting that one would be willing to easily forego a nine-figure sum, the Court finds nothing in the record to support the assertion that the victim has decided to drop its restitution claim.

These are but a handful of examples demonstrating why a restitution order is a

---

[5] Victims were determined using a "cash in/cash out" method. In other words, the Government looked at the funds "provided by an investor to the Petters fraud (directly or through investment funds) less any payment received by the investor." (Doc. No. 456 at 1-2.) If this amount was greater than zero – that is, if the investor provided more money to the fraud scheme than he/she/it received back – then the investor would be deemed a victim. If, on the other hand, the amount of money received from the fraud exceeded that invested, then the investor would be a "net winner" and, accordingly, would not be deemed a victim under the Government's calculus.

thorny proposition here. Putting aside that determining precisely who is a "victim" is itself a challenge,[6] the Court has not been provided with sufficient information to verify whether the amounts sought by the victims are accurate. The Court cannot blindly accept the Government's representations as to loss without some evidentiary basis, even if the amounts sought are unobjected to. Rather, "[w]hen an MVRA victim is identified, the government must prove 'the amount of the loss sustained by [the] victim as a result of the offense' by a preponderance of the evidence." United States v. Chalupnik, 514 F.3d 748, 754 (8th Cir. 2008) (quoting 18 U.S.C. § 3664(e)); accord, e.g., United States v. Young, 272 F.3d 1052, 1056 (8th Cir. 2001) (vacating restitution award based upon victim's estimated lost profits incorporated into pre-sentence investigation report, even though the victim opted not to testify at restitution hearing, because government failed to sustain its burden of proof). Restitution "by its nature requires the calculation of [the] precise dollar amount" lost by each victim, United States v. Moore, 315 Fed. Appx. 16, 20 (9th Cir. 2008) (Bea, J., dissenting); accord, e.g., Young, 272 F.3d at 1056 (vacating restitution

---

[6] Under the MVRA, a "victim" is "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2). A person who suffers incidental or consequential damages is not a "victim" under the statute. United States v. Refert, 519 F.3d 752, 759 (8th Cir. 2008). Here, it is questionable whether investors in hedge funds that in turn invested in the Defendant's fraud – so-called "indirect investors" – are "victims" under the statute. Given how broadly the Eighth Circuit construes the term "victim," however, the Court believes that "indirect investors" fall within the statutory definition. See, e.g., United States v. Waldner, 580 F.3d 699, 710 (8th Cir. 2009) ("We take a broad view of what conduct and related loss amounts can be included.") (quoting United States v. DeRosier, 501 F.3d 888, 896 (8th Cir. 2007)); United States v. Piggie, 303 F.3d 923, 928 (8th Cir. 2002).

award based on "uncertain estimate"),[7] because the Court cannot order restitution in an amount greater than the victims' losses, 18 U.S.C. § 3664(f)(1)(A). The record here simply does not suffice for the Court to make that determination for each of the identified victims.

Moreover, even if the Government were to now supplement the record to address these concerns, the Court would not be relieved of its obligation to review the dozens of victim objections – even those "accepted" by the Government – that have been filed. As it stands, the Court is in no position to sustain or overrule those objections without conducting evidentiary hearings, a lengthy and complicated process at best given the number of objections and the amounts at stake. See 18 U.S.C. § 3664(d)(4) (court "may require additional documentation or hear testimony" in setting restitution); 18 U.S.C. § 3771(a)(4) (crime victims enjoy "the right to be reasonably heard at any public proceeding in the district court involving . . . sentencing").

Although the Court would be ready, willing, and able to determine each victim's restitution award and resolve the outstanding objections if the record were to be supplemented as discussed above, Congress has signaled that the Court need not – and *should not* – undertake that task under the circumstances here. In enacting the MVRA, Congress made clear that district courts should not be saddled by complicated fact-finding with regard to victim loss when ordering restitution. Specifically, despite its name, the

---

[7] But see United States v. Gallant, 537 F.3d 1202, 1252 (10th Cir. 2008); United States v. Vaknin, 112 F.3d 579, 587 (1st Cir. 1997).

MVRA provides that restitution is *not* required

> if the court finds, from the facts on the record, that determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

18 U.S.C. § 3663A(c)(3)(B). This exception recognizes that restitution is "essentially a civil remedy created by Congress and incorporated into criminal proceedings *for reasons of economy and practicality*." United States v. Carruth, 418 F.3d 900, 904 (8th Cir. 2005) (emphasis added). It reflects "Congress's intention that the process of determining an appropriate order of restitution be 'streamlined,' and that the restitution 'determination be made quickly.'" United States v. Reifler, 446 F.3d 65, 136 (2d Cir. 2006) (citations omitted). By including this exception in the MVRA, Congress "hoped to avoid creating a system that would, essentially, turn sentencing hearings into complicated, prolonged trials of the normal civil variety." United States v. Gordon, 393 F.3d 1044, 1060 (9th Cir. 2004) (Fernandez, J., concurring and dissenting). Simply put, "*Congress plainly intended that sentencing courts not become embroiled in intricate issues of proof*" related to restitution. Reifler, 446 F.3d at 136 (emphasis added); see also United States v. Kones, 77 F.3d 66, 69 (3rd Cir. 1996) (discussing similar provision in the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663(a); "[I]t was expected that entitlement to restitution could be readily determined by the sentencing judge based upon the evidence

he had heard during the trial of the criminal case.").[8]

This exception is particularly apt here. Determining the validity of the amounts claimed by each victim on the Government's final proposed restitution list, including the dozens who have objected to the Government's calculations, would take significant time and would be inherently complex, as the Government has twice conceded. Restitution has already been delayed for nearly two months post-sentencing, and the Court believes that it would take *at least* that long to marshal the necessary evidence, resolve all of the many pending objections, and determine the appropriate amount of restitution for each victim, including affording victims the opportunity to be heard. By statute, restitution orders are to be made within 90 days of sentencing, 18 U.S.C. § 3664(d)(5), and that is highly unlikely to occur here if the record is to be adequately supplemented.

Furthermore, even were the Court to wade into this thicket in an attempt to determine the appropriate amount of restitution for each victim, the end result would be meager. The Government has made clear that "restitution payments will represent only a small fraction of the total restitution order," since the assets available for restitution are estimated to be worth approximately $10-20 million (out of more than $2 billion in restitution sought). (Doc. No. 456 at 7.) In other words, restitution will, at best, result in the recovery of something less than a penny for each dollar of victim loss. In assessing whether to decline to order restitution due to complexity or undue delay, the court must

---

[8] Because of the nearly identical language in the VWPA and the MVRA, courts often look to cases construing the former when interpreting the latter. E.g., United States v. Oslund, 453 F.3d 1048, 1063 (8th Cir. 2006).

evaluate "the need to provide restitution to any victim." 18 U.S.C. § 3663A(c)(3)(B). Here, the need for restitution is limited by its probable value, and the victims needing it most – unsophisticated individual investors who saw their life savings frittered away by the Defendant's fraud – likely would recover the smallest amounts, since the vast majority of losses were suffered by hedge funds and similar entities.

The Court also notes that alternative avenues of recovery are available to victims. The Government has previously suggested that, absent a restitution order, it would invoke its authority under Part 9 of Title 28 of the Code of Federal Regulations to remit forfeited assets – the same assets making up the pool of restitution funds – to victims. (See Doc. No. 393 at 3 n.1.)[9] In other words, through the remission process victims will have the opportunity to seek restitution from the same funds from which Court-ordered restitution would be made. In addition, bankruptcy proceedings involving the Defendant's companies are currently pending, in which many of the victims have already asserted claims. The United States Trustee's Office "plans to assist all victims . . . in filing a bankruptcy claim (if a victim has not filed one already)." (Doc. No. 456 at 10 n.5.) And the funds available for distribution in the bankruptcy proceedings likely will far outpace those available here, since "clawbacks" and similar litigation are to take place there. (See Doc. No. 456 at 10 (noting that "there could be substantial distributions to the bankruptcy creditors through the bankruptcy proceedings").) Hence, victims have several means to

---

[9] Under the "remission" process, a crime victim may seek assets that have been forfeited by the Government as a result of a criminal offense in order to make up for the victim's loss. See generally 28 C.F.R. § 9.8.

recoup their losses other than restitution, before decision-makers better equipped to resolve their claims.[10]

At bottom, Section 3663A(c)(3)(B) calls for "a weighing of the burden of adjudicating the restitution issue against the desirability of *immediate* restitution – or, otherwise stated, a weighing of the burden that would be imposed on the court by adjudicating restitution in the criminal case against the burden that would be imposed on the victim by leaving him or her to other available legal remedies." Kones, 77 F.3d at 69. The burden imposed on the Court by ordering restitution here would be significant. At this juncture, the Court "simply does not have the factual record at its disposal to craft a restitution order without prolonging [the matter] for an intolerable period of time." United States v. Collardeau, No. Crim. 03-800, 2005 WL 1106475, at *8 (D.N.J. Apr. 28, 2005). On the other hand, the burden imposed on victims by declining restitution would not be overwhelming. While the Court is not unsympathetic to their plight, the victims have alternative avenues available to them, including one in which many victims have already asserted claims (bankruptcy). The amount of money at stake here, relative to their claims, is small. The benefits of a restitution order, therefore, would be minimal in the overall scheme of this case.

For these reasons, the Court concludes that, on balance, determining complex issues of fact related to the amount of the victims' losses would both complicate and

---

[10] Indeed, it would be a waste of resources to order restitution of pennies on the dollar (at best) when most victims have filed, or will be filing, parallel claims in the bankruptcy proceedings.

prolong the sentencing process to such a degree that the need to provide restitution is outweighed by the burden it would impose. 18 U.S.C. § 3663A(c)(3)(B). Based on the foregoing, and all the files, records, and proceedings herein, the Court **DECLINES** to order restitution. Instead, the Government may proceed through the remission process, as authorized in 21 U.S.C. § 853(j) and 28 C.F.R. Part 9. The restitution hearing currently scheduled for June 9, 2010, is **CANCELED**. The Government is **DIRECTED** to forward a copy of this Order to each victim identified on its final proposed restitution order.[11]

Dated: June 3, 2010                                                         s/Richard H. Kyle
                                                                            RICHARD H. KYLE
                                                                            United States District Judge

---

[11] Shortly before the Court issued this Order, the Defendant filed a position statement (Doc. No. 458) advocating for the same result reached here: no restitution. Nevertheless, the Court bases its decision on the complexity and length of the restitution process, not on the Defendant's arguments.